**IT IS ORDERED as set forth below:**

**Date: May 21, 2020**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | CASE NUMBER |
| **TERRA TARICE COLES,** | 17-72218-PMB |
| Debtor. | CHAPTER 7 |
| **JORDAN E. LUBIN,** | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. **19-5208-PMB** |
| **TIAA, FSB D/B/A TIAA BANK F/K/A EVERBANK, FSA S/B/M TO EVERHOME MORTGAGE COMPANY,** | |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter comes before the Court on the *Motion to Dismiss* (Docket No. 11)(the "Motion to Dismiss") filed by Defendant TIAA, FSB d/b/a TIAA Bank f/k/a EverBank, FSA s/b/m to

EverHome Mortgage Company ("TIAA") on August 9, 2019. The Motion to Dismiss was filed in response to the *Amended Complaint to Avoid Lien* (Docket No. 9)(the "Complaint") filed by Jordan E. Lubin, the duly appointed Chapter 7 trustee in the above-captioned case (the "Trustee"), on July 18, 2019. On August 28, 2019, the Trustee filed his *Plaintiff's Response in Opposition to Defendant's Motion to Dismiss* (Docket No. 15)(the "Trustee Response"). On September 10, 2019, TIAA filed its *Reply to Response in Opposition to Motion to Dismiss* (Docket No. 16)(the "TIAA Reply"). The Court held a hearing on the Motion to Dismiss, the Trustee Response and the TIAA Reply on April 15, 2020 (the "Hearing"). Counsel for the Trustee and for TIAA attended the Hearing.

At the center of this dispute is a security deed (the "Security Deed")[1] made by Terra Tarice Coles, the debtor in this case (the "Debtor"), in favor of the predecessor in title to TIAA. The Security Deed purportedly conveys to TIAA an interest in real property with a current street address of 1575 Stone Gate Lane, Atlanta, Georgia 30317 (the "Property"). In the Complaint, the Trustee asserts three (3) Counts against TIAA. In Count I, the Trustee argues that TIAA and its predecessors in interest had no properly recorded interest in the Property pursuant to the Security Deed under Georgia law as of December 28, 2017, the date of the filing of the petition in this Chapter 7 case (the "Petition Date"), due to certain inaccuracies in the legal description included in the Security Deed, such that the Trustee is entitled to avoid the transfer of the Property to TIAA pursuant to the Security Deed under Section 544 of Title 11, United States Code (the "Bankruptcy Code") . In Count II, the Trustee seeks to preserve the transfer avoided in Count I for the benefit

---

[1] A copy of the Security Deed is attached to the Complaint as Exhibit "A". The Trustee avers in the Complaint, and the Security Deed on its face shows, that the Security Deed is recorded in the real property records of DeKalb County, Georgia at Deed Book 19353, Pages 602-20.

2

of the estate pursuant to Section 551 of the Bankruptcy Code.  In Count III, the Trustee argues that all mortgage payments made by the Debtor to TIAA after the Petition Date are unauthorized postpetition transfers and seeks to recover them pursuant to Sections 549 and 550 of the Bankruptcy Code.  In the Motion to Dismiss, TIAA responds by asserting that none of the three (3) Counts sets forth a plausible claim for relief as required by Federal Rule of Civil Procedure (hereinafter "Rule") 12(b)(6).[2]

## I. STANDARD OF REVIEW

Under Rule 12(b)(6), made applicable herein through Federal Rule of Bankruptcy Procedure (hereinafter "Bankruptcy Rule") 7012(b), dismissal of a complaint is appropriate if that complaint fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is interpreted though the lens of Rule 8(a), made applicable herein through Bankruptcy Rule 7008, which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  Under this standard, "to survive a motion to dismiss, a complaint must now contain factual allegations that are 'enough to raise a right to relief above the speculative level.'"[3]

---

[2] TIAA's arguments in the Motion to Dismiss all relate to the validity of Count I.  Then, assuming that Counts II and III are derivative of Count I, TIAA simply says, as to Counts II and III, as follows: "Accordingly, his claims flowing therefrom, specifically as to preservation of avoided transfers and recovery of post-petition payments, are also due to be dismissed for failure to state a claim upon which relief can be granted."  Motion to Dismiss, at 8-9.  Count II is clearly derivative of Count I and stands or falls with it.  Count III as plead does not appear to the Court to be at all derivative of Count I.  However, at the Hearing, counsel for the Trustee acknowledged that Count III, like Count II, relies on the successful assertion of Count I.  Count III is nevertheless addressed further *infra* in section III, subsection C of this Order.

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoted in Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D. Fla. 2007);  *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009);  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

When considering a motion to dismiss, the inquiry is restricted to the legal feasibility of the allegations in the complaint and whether they set forth facts as opposed to labels or mere conclusory statements. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, if evidence outside the scope of the pleadings is considered to arrive at a decision on a motion to dismiss, then that motion to dismiss should be converted to a motion for summary judgement. *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008). However, new documents attached to a motion to dismiss do not automatically convert the motion to one for summary judgment if those documents are central to the complaint and their contents are not in dispute. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 fn.2 (11th Cir. 1999).[4]

## II. FACTUAL BACKGROUND

The facts underlying the Complaint, the Motion to Dismiss, the Trustee Response, and the TIAA Reply are undisputed. On September 18, 2006, the Debtor acquired the Property from Etchane J. Williams via a warranty deed that was later recorded at Deed Book 19353, Page 601, DeKalb County, Georgia records (the "Warranty Deed").[5] On that same date, the Debtor made

---

[4] Based upon the foregoing standard, the Court can and will consider the Warranty Deed (defined *infra*), which was attached as Exhibit 1 to the Motion to Dismiss. The Warranty Deed on its face was recorded immediately before the Security Deed in the DeKalb County, Georgia deed records, and is expressly cross-referenced in the Scrivener's Affidavit (defined *infra*), which is attached to the Complaint as Exhibit "B". Further, the Warranty Deed is central to the Complaint, since it is the document by which the Debtor acquired the property that the Trustee seeks to free from the Security Deed, and is the document the chain of title of which is critical to the resolution of this matter. A dispute does exist as to the accuracy and authenticity of the documents attached by TIAA to the Motion to Dismiss as Exhibits 2-4. This dispute will not convert the Motion to Dismiss into one for summary judgment in the present case because reliance those documents is not necessary to rule on the merits of the Motion to Dismiss. *Hopkins v. PHH Mortg. Corp.*, No. 218CV00042RWSJCF, 2019 WL 3526502, at *2 fn.3 (N.D. Ga. May 30, 2019), *report and recommendation adopted*, No. 218CV00042RWSJCF, 2019 WL 5483785 (N.D. Ga. Sept. 6, 2019).

[5] A copy of the Warranty Deed is attached to the Motion to Dismiss as Exhibit 1. At the Hearing, counsel for the Trustee acknowledged that the Warranty Deed is a true and correct copy of the document by which the Debtor acquired

4

the Security Deed in favor of Opteum Financial Services, LLC ("Opteum"). In so doing, the Debtor attempted to grant Opteum security title in the Property to secure a loan by Opteum to the Debtor of one-hundred and twenty-three thousand dollars ($123,000.00).[6] On July 1, 2008 Opteum assigned the Security Deed to TIAA pursuant to a document entitled "Assignment" (the "Assignment").[7] The property description in the Security Deed as of the date of its filing[8] was as follows (hereinafter, the "Original Property Description"):

> All that tract or parcel of land lying and being in Land Lot 207, of the 15th District, DeKalb County, Georgia, and being more particularly described as condominium Unit 29, Phase II, Stone Gate Cottages, A Condominium, as shown on a plat of survey recorded in Condominium Plat Book 122, Page 63, DeKalb County, Georgia Records, and as shown in Floor Plans recorded at Condominium Plat Book 122, Pages 56-62, together with all right title and interest in said condominium and restrictions for Stone Gate Cottages Condominiums, recorded in Deed Book 12248, Page 782, DeKalb County, Georgia Records, which Plat, Plans and Declaration and all recorded amendments thereto are, by reference, incorporated herein and made a part hereof.
> This conveyance is made subject to all the provisions in said declaration and the Georgia Condominium Act, Official Code of Georgia Annotated, Section 44-3-70 ET SEQ. The property herein conveyed is intended solely for use as provided in said declaration.
>
> 1602 Memorial Drive SE, Unit 29, Atlanta, GA 30317
> Tax ID: 15-207C-2-66
>
> *See* Docket No. 9, Exhibit A, Page 27

---

the Property, and that the Court could consider it in connection with the Motion to Dismiss. The Warranty Deed when filed contained the Original Property Description (defined *infra*).

[6] These facts are also recited in the Scrivener's Affidavit.

[7] The Assignment is attached to the Complaint as Exhibit "B". In the Complaint, the Trustee notes that the Assignment was recorded in the "Real Property Records of Dekalb (sic) County, at Deed Book: 20914. Page 369" (Docket No. 9, ¶ 10). Like the Security Deed, the Assignment also recites the Incorrect Address (defined *infra*).

[8] According to markings on the first page of each document, the Security Deed and Warranty Deed were both filed for recording in the real property records of DeKalb County, Georgia at 4:24 p.m. on November 9, 2006, and were recorded consecutively, the Warranty Deed appearing at page 601 and the Security Deed beginning at page 602 of Deed Book 19353.

The address of 1602 Memorial Drive SE, Unit 29, Atlanta, Georgia 30317 (the "Incorrect Address") and the Parcel ID number of 15-207C-2-66 (the "Incorrect Parcel ID") set forth at the end of the Original Property Description were both inaccurate at all relevant times.[9]

On May 14, 2009, a document entitled "Scrivener's Affidavit" was filed in the real property records of DeKalb County, Georgia, at Deed Book 21433, Page 445 (the "Scrivener's Affidavit").[10] The Scrivener's Affidavit contains a cross-reference to both the Warranty Deed and the Security Deed, and amends the Original Property Description in both the Warranty Deed and the Security Deed to correct the phase in which the Property is located from Phase II to Phase I and to correct the Condominium Plat Book number for the condominium floor plans from Condominium Plat Book 122, pages 56-62 to Condominium Plat Book 121, page 73. The Scrivener's Affidavit does not change the Condominium Plat Book reference for the condominium development as a whole (Condominium Plat Book 122, page 63), which was not challenged in the Complaint by the Trustee, nor does it alter the Incorrect Address or the Incorrect Parcel ID set forth in the Original Property Description. The Scrivener's Affidavit refers to the Property using

---

[9] The parties appear to agree that the Incorrect Address and Incorrect Parcel ID are not the correct street address and tax parcel ID for the Property today. There is no evidence as to whether the Incorrect Address and Incorrect Parcel ID were accurate when the Security Deed was filed in 2006, as such things can and do change. For the purposes of this Order, the Court has assumed that both pieces of information were inaccurate at all relevant times. If, of course, the Incorrect Address and Incorrect Parcel ID were correct when the Security Deed was filed, that might provide another basis to dismiss the case, but whether it would does not need to be decided here.

[10] In Georgia, recorded affidavits may be filed to give notice of the facts recited therein provided: (1) the recorded affidavit contains one of nine specifically enumerated types of information, and (2) the recorded affidavit was properly filed. *See In re Adams*, 583 B.R. 541, 555 (Bankr. N.D. Ga. 2018)("§ 44–2–20 applies specifically to affidavits containing particular information—and not to recorded documents generally"). As to putting forth the appropriate type of information, Section 44-2-20(a) of the Code of Georgia includes a showing of any "fact or circumstance affecting title to land or any right, title, interest in, or lien or encumbrance upon land." O.C.G.A. § 44-2-20(a)(9). As to being properly filed, Section 44-2-20(c) outlines the criteria for properly filing a recorded affidavit. Here, the Scrivener's Affidavit appears—and no party contests—to (1) contain an appropriate showing of facts affecting an encumbrance on the Property, and (2) be filed in accordance with Section 44-2-20(c). Consequently—under Georgia law—the Scrivener's Affidavit is effective to give notice of all facts it contains.

6

the Incorrect Address twice. No further changes to the Original Property Description, as amended by the Scrivener's Affidavit (as so amended, the "Amended Property Description"), have been made since the filing of the Scrivener's Affidavit, such that the Amended Property Description still contains the Incorrect Address and the Incorrect Parcel ID. Based on the foregoing, the Security Deed has at all times contained the exact same legal description as the Warranty Deed through which the Debtor acquired her interest in the Property.

### III. DISCUSSION

The Complaint relies on a single legal theory—that the Incorrect Address and Incorrect Parcel ID in the Security Deed render the Security Deed ineligible for recording under Georgia law[11] and that the Trustee, standing in the shoes of a hypothetical bona fide purchaser of the Property, does not have constructive or inquiry notice of the Security Deed due to these two (2) errors. Because of this lack of notice of the Security Deed, the Trustee argues, he can avoid TIAA's interest for the benefit of the estate. For the reasons stated below, the Court does not find this theory persuasive under applicable Georgia law[12] and dismisses this case.

#### A. *TIAA's Security Deed Was Eligible for Recording Under Georgia Law*

As a general matter, security deeds are properly recorded if they adhere to the recordation requirements in existence at the time of recordation. *In re Simpson*, 544 B.R. 913, 918 (Bankr. N.D. Ga. 2016). Prior to July 1, 2015, the Georgia law governing the attestation requirements for

---

[11] At the Hearing, counsel for the Trustee indicated that the Trustee does not actually contend that the Security Deed was ineligible for recording. This argument, which was raised by TIAA, is addressed briefly *infra*, at section III, subsection A.

[12] Although the Trustee's status as a bona fide purchaser is rooted in the Bankruptcy Code, the rights the Trustee has—as a bona fide purchaser—with respect to other parties is determined by looking to Georgia law. *In re Henderson*, 284 B.R. 515, 517 (Bankr. N.D. Ga. 2002).

security deeds was the same as that for mortgages. More specifically, the Georgia statute governing real property recordation—Official Code of Georgia Annotated § 44-14-33—provided as follows:

> In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness. In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers.
>
> O.C.G.A. § 44-14-33 (2006).

To the extent the recordation of a security deed is challenged, if that deed was recorded prior to July 1, 2015, that challenge must be evaluated in the context of the foregoing Georgia recording law in effect at the time of recording.

Through the lens of § 44-14-33, the Security Deed was properly recorded under the then–existing Georgia law. According to the 2006 statute, a security deed must be attested *or* acknowledged before an officer and attested *or* acknowledged by one additional witness. Here, the Security Deed was signed and attested to by a notary public and an unofficial witness. By the plain language of the 2006 version of Section 44-14-33,[13] the Security Deed was properly recorded.[14]

---

[13] The post-2015 version of O.C.G.A. § 44-14-33 requires that a properly recorded mortgage be "signed by the maker, attested by an officer as provided in Code Section 44-2-15, and attested by one other witness." This statutory language is not applicable here.

[14] To the extent the Trustee argues that the Security Deed was not eligible for recording due to the Incorrect Address and Incorrect Parcel ID, that argument is not persuasive. Under Georgia law, if a security deed suffers from a patent defect, such defect will not necessarily render an otherwise properly recorded security deed improperly recorded. However, a patent defect will prevent an otherwise properly recorded deed from providing a bona fide purchaser with constructive notice. Conversely, a security deed with only latent defects will not necessarily extinguish a bona fide purchaser's constructive notice of an encumbrance. *In re Brownlee*, 606 B.R. 508, 511 (Bankr. M.D. Ga. 2019). A patent defect is "obvious and easily detectable" and is contrasted with a latent defect, which is one that is "not apparent on the face of the deed." *In re Simpson*, 544 B.R. 913, 918 (Bankr. N.D. Ga. 2016). Simply put, the hallmark of a

### B. Errors in the Security Deed

Section 544(a)(3) of the Bankruptcy Code gives a Chapter 7 trustee the power to avoid a security deed if a hypothetical bona fide purchaser would take free of it under state law. 11 U.S.C. § 544; *E.g.*, *In re Krieg*, No. 16-72067-PMB, 2018 WL 1448743, at *2 (Bankr. N.D. Ga. Mar. 21, 2018), *aff'd* 1:18-cv-01485-WMR (N.D. Ga. Nov. 26, 2018), *aff'd* 951 F.3d 1299 (11th Cir. 2020).

It has been long held in Georgia that a purchaser of land is "charged with notice of every fact shown by the records and is presumed to know every other fact which an examination suggested by the records would have disclosed." *Deljoo v. SunTrust Mortg., Inc.*, 668 S.E.2d 245, 246 (Ga. 2008). The Security Deed here is indisputably of record, and there are no deficiencies in it that would prevent it from providing constructive notice other than the Incorrect Address and the Incorrect Parcel Number. Those would presumably impair the Trustee's constructive notice only because he, as a bona fide purchaser looking only at the Security Deed, might believe that the Security Deed related to some property of the Debtor other than the Property.[15] There are two

---

patent defect is the complete absence of certain information, while the hallmark of a latent defect is inaccurate information. Here, the Security Deed is not missing information. Because the Trustee asserts the Security Deed contains inaccurate information, any potential defect is certainly latent.

[15] Nowhere does the Trustee actually assert that the incorrect information creates confusion by leading a bona fide purchaser to a different property. In fact, as outlined below, using the incorrect information—the Incorrect Address and Incorrect Parcel ID—on the DeKalb County Property Appraisal website (propertyappraisal.dekalbcountyga.gov) (the "Appraisal Site") does not in fact lead to another property like the Property, which the bona fide purchaser presumably knows (because, among other things, its legal description says so) is a condominium. The Court may consider the Appraisal Site because the Trustee used the Appraisal Site to determine that the Incorrect Parcel ID was incorrect, and that the correct parcel ID number for the Property is 15-207-03-103. *See* Complaint, ¶ 12. The Trustee presumably finds that system to be reliable, and TIAA did not object to its use to verify the inaccuracy of the Incorrect Parcel ID. Further, the system is sufficiently reliable that the Court can take judicial notice of information posted there. *See Chinn v. PNC Bank, N.A.*, No. 1:10-CV-3157-WSD, 2011 WL 13177481, at *2 (N.D. Ga. Mar. 7, 2011), *aff'd*, 451 F. App'x 859 (11th Cir. 2012); *House v. Balkcom*, 562 F. Supp. 1111, 1138 fn. 37 (N.D. Ga. 1983).

Entering the Incorrect Parcel ID into the Appraisal Site yields nothing—the Incorrect Parcel ID apparently does not presently identify any property. So the Incorrect Parcel ID is clearly erroneous information that a bona fide purchaser would easily confirm was incorrect and would ignore. Entering the entire Incorrect Address yields one (1) property— parcel ID number 15-207-03-147. The owner of that property is listed as "Stone Gate Cottages Condominium Association, Inc." Based on the map of that parcel also available on the Appraisal Site (showing vacant land expressly

facts shown by the records, however, that give a bona fide purchaser constructive notice that the Security Deed in fact relates to the Property and prevent him from taking the Property free and clear of the Security Deed.

First, the Debtor acquired the Property through the Warranty Deed. The Trustee has constructive notice of that recorded document and its contents. *In re Mun. Corr., LLC*, 501 B.R. 119, 132 (Bankr. N.D. Ga. 2013). The Amended Property Description is identical in the Warranty Deed and in the Security Deed, the two (2) documents were recorded consecutively in the DeKalb County real property records, and the Security Deed is in the chain of title of the Warranty Deed.[16] By virtue of those simple facts, the Trustee certainly has constructive notice that whatever interest the Debtor acquired by virtue of the Warranty Deed was encumbered by the Security Deed. *See In re Hangendorfer*, 803 F.2d 647, 649-50 (11th Cir. 1986)(reaching the same conclusion regarding a bona fide purchaser status in very similar circumstances under Alabama law).

Second, and maybe even more compelling, the Scrivener's Affidavit, which the Trustee attaches to his Complaint and admits is in the relevant chain of title, also provides constructive

---

excluding the buildings located on it) and property categories used to describe this property (referred to as vacant land and common area), this property is the common area for a different phase of the Stone Gate Cottages (1575 Stone Gate is located within a different common area parcel), and not a condominium. Based on that search, a bona fide purchaser would no doubt conclude that, like the Incorrect Parcel ID, the Incorrect Address is also incorrect. Consequently, it is not clear that the Incorrect Address or the Incorrect Parcel ID would create any actual confusion.

[16] This is so because a title examiner examining title to the property interest obtained by the Debtor under the Warranty Deed would search for documents on which the Debtor was the grantor recorded in the same county as the Property and that were recorded after the Warranty Deed. *See SunTrust Bank v. Equity Bank, S.S.B.*, 719 S.E.2d 539, 540-41 (Ga. Ct. App. 2011); *see generally* Daniel F. Hinkel, *The record search*, 3 PINDAR'S GA. REAL ESTATE LAW & PROCEDURE § 26:5 (7th ed. 2020). In such a search, the examiner would find the Security Deed, recorded immediately after the Warranty Deed. The only issue for the examiner at that point would be whether the Security Deed related to the same property as the Warranty Deed. Since the legal descriptions on the two documents are identical, and the Scriveners Affidavit amends both descriptions in the same way (suggesting further that they are the same property) and refers in its recitals to the creation of both documents in connection with one another, there would be no doubt that the Warranty Deed and the Security Deed related to the same property.

notice of the Security Deed to a bona fide purchaser of the Property. In Paragraphs 1 and 2 of the Scrivener's Affidavit, the attorney who closed the transaction by which the Debtor acquired the Property describes the transaction as involving the loan from Opteum, and identifies the resulting Warranty Deed and Security Deed by deed book and page number. It is hard to imagine a document that would more clearly inform a bona fide purchaser—transacting with the Debtor for the Property conveyed to the Debtor by the Warranty Deed[17]—that such Property is bound by the Security Deed. This point of information, together with the circumstances described in the prior paragraph, both of which are plain from a review of the real property records, prevent a bona fide purchaser from being able to take free and clear of the Security Deed.

There is a third set of information, a "key" that, but for the somewhat inexplicable absence in the record of certain other readily available recorded information, may also provide a basis to grant the Motion to Dismiss. More specifically, neither of the two (2) Condominium Plat Book pages referred to in the Amended Property Description (the "Missing Plats"), which are both available to the public in the DeKalb County real property records, is in the record in this matter. The Trustee describes the changes made in Scrivener's Affidavit as having "corrected the incorrect phase number, and plat book and page number." *See* Complaint at ¶15. In so arguing, the Trustee could be construed to concede that the plat book and page number and phase references in the Amended Property Description now refer correctly to the Property. Whether they do should be

---

[17] The Trustee, possibly recognizing the glaring weaknesses in his case identified in these last two (2) paragraphs, has studiously avoided reference to the Warranty Deed in his pleadings. He did not refer to the Warranty Deed in his Complaint, identifying the Property only by its current street address. However, a bona fide purchaser is surely charged with the obligation of identifying the recorded instrument through which his prospective seller acquired his or her interest, as the analysis as to whether such purchaser is a bona fide purchaser depends quite critically on the chain of title of that document. *See In re Mun. Corr., LLC*, 501 B.R. at 132. As such, the Warranty Deed is "central to the [Trustee's] claim" and may be considered on the Motion to Dismiss without converting it to a summary judgment motion. *See supra* note 4.

readily apparent from even a brief review of the Missing Plats.  However, counsel for the Trustee did not concede at the Hearing that the Missing Plats accurately showed the Property as Unit 29 of Phase I—although he also did not clearly assert that the Missing Plats do not show the Property as Unit 29 of Phase I.  Instead, he contended that those facts were a matter for discovery—even though the contents of the Missing Plats, which are incorporated by reference in the Amended Property Description, are something about which the Trustee would be deemed to have inquiry (if not constructive) knowledge.[18]

Errors in a security deed cannot destroy a purchaser's constructive notice insofar as the deed succeeds in the meager task of providing the purchaser with records which, upon further investigation, would unerringly lead to extrinsic evidence which in turn would reveal the encumbrance at issue.  *In re Turner*, No. 1:15-CV-0359-AT, 2015 WL 10550965, at *5 (N.D. Ga. Dec. 4, 2015).  In that regard, Georgia has adopted a "key" rule with respect to the information necessary to trigger a purchaser's duty to investigate further.  This rule sets out that a security deed is sufficient to provide a purchaser with constructive notice if it contains "key" information that would unerringly lead a purchaser to extrinsic evidence which, in turn, would identify the property at issue.[19]  *Id*.  "Key" information can often be contained in a property description, even if that description is vague.  *Id*.

---

[18] The internal reference to a plat book, under Georgia law, in a security deed's property description is to be treated as if the plat book were written out in full on the deed itself.  *Deljoo v. SunTrust Mortg., Inc.*, 668 S.E.2d 245, 247 (Ga. 2008)("[A] legal description [that] incorporates a recorded plat by reference . . . has the same effect as if the plat were written out in the deed.").  Georgia courts have determined that these references to plat book pages can act as a "key" to other record information unless a defect in that plat book page is presented.  *Barto v. Hicks*, 184 S.E.2d 188, 190 (Ga. Ct. App. 1971), *disapproved of on other grounds by Homler v. Malas*, 494 S.E.2d 18 (Ga. Ct. App. 1997); *Deljoo*, 668 S.E.2d at 247.  None has been presented here.

[19] If "key" information is present in a deed it will place the purchaser on inquiry notice, at which point the purchaser is attributed constructive notice of "everything to which it is afterwards found that such inquiry might have led."

Importantly, "key" information—triggering a bona fide purchaser's duty to inquire further—need not be any one particular type or piece of information. Georgia courts have held that plat and deed book references may serve as a sufficient "key" in the face of an incorrect land lot number. *Deljoo*, 668 S.E.2d at 247. Conversely, Georgia courts have also held that a correct street address and tax parcel identification number may serve as a "key" where the metes and bounds description of the property is inaccurate. *SunTrust Bank v. Equity Bank*, *S.S.B.*, 719 S.E.2d 539, 541 (Ga. Ct. App. 2011). In these cases, the fundamental inquiry focused on whether the correct information on the deed was "manifestly too meager, imperfect, or uncertain to serve as adequate means of identification that the court can adjudge the description insufficient as matter of law." *Commodity Credit Corp. v. Wells*, 188 Ga. 287, 290, 3 S.E.2d 642, 644 (Ga. 1939).

*Deljoo* and *Equity Bank* are both instructive here if the Missing Plats accurately show the Property. In *Deljoo*, S&F Construction gave a security deed to Mr. Deljoo in 2000. The legal description included in the security deed contained an inaccurate land lot number (18 instead of 28). The same property was later conveyed in 2001 to a Doris Milton, who financed the purchase with a loan from SunTrust Mortgage Inc. ("SMI"). The legal descriptions on the deeds to Ms. Milton (and thus to SMI) and to Mr. Deljoo were the same, but for the incorrect land lot number in Mr. Deljoo's security deed. Both such descriptions, however, contained reference to the same plat recorded in the relevant records, and identified the property by reference to lot numbers on the plat. In *Deljoo*, the Georgia Supreme Court held that where there was a mistake in a legal description that also included a reference to a plat that accurately described the property, the plat

---

*Hamilton State Bank v. Fid. Nat'l Title Ins. Co.*, No. 1:13-CV-00040-MHS, 2013 WL 12068982, at *2 (N.D. Ga. Mar. 21, 2013)(*quoting Gallagher v. Buckhead Cmty. Bank*, 683 S.E.2d 50, 54 (Ga. Ct. App. 2009)).

13

provided the "key" to identifying the property, the property description having performed its meager service in identifying the property.

If the Missing Plats turn out to show the Property as Unit 29 in Phase I, then *Deljoo* would control and the Motion to Dismiss could be granted on this basis also. More particularly, the Amended Property Description contains the corrected Condominium Plat Book and Page Reference (121, 73) and Phase Number (I). This corrected information, together with the already correct Condominium Plat Book and Page numbers for the development generally, would govern to the extent they offer the most material and certain description of the Property.[20] *Thompson v. Hill*, 73 S.E. 640, 642 (Ga. 1912). Under *Deljoo*, if reading the Missing Plats would identify the property owned by the Debtor, then the inquiry would be over and the Trustee would be deemed to have constructive notice of TIAA's interest in it. In this case, because the Missing Plats are not in the record, it is not clear that reading those plats would lead to that result.

Similarly, in *Equity Bank*, a borrower acquired some real property, and then a few days later took out a loan from SunTrust Bank ("SB") secured by that property. The legal description in the security deed contained an accurate street address and tax ID number for the property but contained the metes and bounds legal description of a nearby property not owned by the borrower. The following year, the borrower took out another loan secured by the property from Wachovia Bank, which recorded its own security deed. The Court of Appeals in *Equity Bank* found that,

---

[20] An erroneous element of a property's description will yield to the more definite description by plat book number where it is evident the plat book number is known and important. *Thompson v. Hill*, 73 S.E. 640, 642 (Ga. 1912). The Scrivener's Affidavit makes clear that the plat book and page and phase numbers were initially inaccurate, were actually known, and were important enough to have their accuracy ensured by the filing of an affidavit. These amended plat book and page and phase references are the most definite portions of the Property's description and will control. This conclusion is bolstered by the fact that the Trustee does not contest the accuracy of the other portions of the Amended Property Description other than the Incorrect Address and the Incorrect Parcel ID.

14

although the metes and bounds legal description was inaccurate, the street address and tax ID number provided adequate keys to put Wachovia Bank on inquiry notice of the SB security deed. If the Missing Plats turn out to show the Property as Unit 29 of Phase I, *Equity Bank*, as the simple converse of the circumstances in this case, would also be extremely persuasive.

In sum, the Trustee, as a bona fide purchaser, has constructive notice of the Security Deed through its recording proximity to the Warranty Deed and their identical legal descriptions, and because the Security Deed was tied of record to the Warranty Deed by the Scriveners Affidavit. As a result, the Trustee may not avoid TIAA's valid interest. In addition, if the Missing Plats show the Property as Unit 29 of Phase I, then they would serve as a "key" to trigger the Trustee's duty to inquire further and to find that the Security Deed encumbers the Property. Were those facts to pertain, the Trustee would also have been on inquiry notice regarding the existence of the Security Deed and would have taken subject to it. *Deljoo*, 688 S.E.2d at 247; *Equity Bank*, 719 S.E.2d at 541; *Mitchell v. Bank of Am., N.A.*, No. 1:19-CV-1262-MHC-JSA, 2019 WL 7493523, at *3 (N.D. Ga. Sept. 12, 2019), *report and recommendation adopted*, No. 1:19-CV-1262-MHC-JSA, 2019 WL 7493529 (N.D. Ga. Sept. 27, 2019). This disposes of Counts I and II of the Complaint.

### C. Count III

In Count III, the Trustee seeks to recover payments made by the Debtor to Movant after the Petition Date (the "Postpetition Payments") under Section 549 of the Bankruptcy Code. In Count III, the Trustee does not expressly connect the payments he seeks to recover with the avoidance and preservation of the Security Deed sought in Counts I and II.[21] However, to the

---

[21] The only connection between this Count and the avoidance and preservation of the Security Deed is the ubiquitous incorporation into it by reference of the first twenty-eight paragraphs of the Complaint. This bland incorporation does not provide any explanation to the Court as to how the avoidance of the Security Deed might relate to Count III.

extent that the Trustee seeks to recover the Postpetition Payments because he asserts that the estate holds the avoided Security Deed and thus is entitled to its proceeds, that claim is dismissed because the Security Deed will not be avoided under Count I.[22]

As plead,[23] Count III appears seek recovery of payments made by the Debtor after the Petition Date because they were not approved by the Court or authorized by the Bankruptcy Code, without any connection to the avoidance of the Security Deed.  Understood this way, Count III does not state a claim upon which relief could be granted because there is no allegation that the Postpetition Payments were made with property of the estate,[24] rendering Section 549 inapplicable to them.  Consequently, Count III should also be dismissed.

In light of the foregoing, it is hereby **ORDERED** that the Motion to Dismiss is **GRANTED** and the Complaint, including all Counts asserted therein against TIAA in this Adversary Proceeding, is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to serve a copy of this Order upon the Trustee, counsel for the Trustee, the Debtor, counsel for the Debtor, and the United States Trustee.

**[END OF DOCUMENT]**

---

[22] There is also no explanation as to why the Trustee would be retroactively entitled to payments made before the Security Deed was actually avoided.

[23] Counsel for Trustee indicated at the Hearing that the claim understood this way was not what the Trustee intended. This treatment of it is included for completeness.

[24] In fact, the Postpetition Payments were likely made using the Debtor's postpetition earnings, or perhaps some exempt assets, neither of which are property of the estate. *See generally* 11 U.S.C. § 541.